NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2026 CU 0233

MALLORI ELIZABETH DIEZ

VERSUS

KYLE MATTHEW HUDSON

*Judgment Rendered:* JUL 15 2026

********

On Appeal from the Family Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. 236288

The Honorable Kyle Russ, Judge Presiding

********

| | |
|---|---|
| Mark D. Plaisance | Counsel for Plaintiff/Appellant |
| Marcus J. Plaisance | Mallori Elizabeth Diez |
| Prairieville, Louisiana | |
| | |
| Jennifer M. Moisant | Counsel for Defendant/Appellee |
| Baton Rouge, Louisiana | Kyle Matthew Hudson |

********

BEFORE: LANIER, WOLFE, AND FIELDS, JJ.

**LANIER, J.**

In this custody dispute, the mother challenges the trial court's September 30, 2025 judgment that modified a prior custody agreement. For the reasons that follow, we affirm the trial court's judgment and issue this memorandum opinion in compliance with Uniform Rules–Courts of Appeal, Rule 2-16.1(B).

## BACKGROUND

According to the record, the parties, Mallori Elizabeth Diez and Kyle Matthew Hudson, were married in October 2021; one child, MMH (DOB 2/10/22) was born of their marriage. Mallori filed a petition for divorce in May 2024, seeking joint custody of MMH, with her designated as domiciliary parent. The parties were ultimately divorced by judgment signed June 26, 2025.

Following a hearing on preliminary issues, the trial court signed an interim judgment on July 11, 2024, granting the parties shared physical custody of MMH. Thereafter, the parties entered into a Stipulated Judgment, signed by the trial court on August 29, 2024, agreeing to "pass on a hearing regarding certain issues pending for trial." In addition to resolving issues such as physical custody, a holiday schedule, child support, and health insurance, the parties agreed to joint custody of MMH, pretermitting the designation of domiciliary parent. The judgment provided further that all of the stipulations were made "without prejudice to either party to seek a judicial modification without the necessity of showing a change in circumstance."

In January 2025, Kyle filed a rule to modify custody requesting that he be awarded primary physical custody and named domiciliary parent and that the trial court issue a joint custody implementation plan. Kyle alleged that Mallori was arrested and charged in connection with a battery she committed against his son from

a prior marriage.[1]  Mallori also filed a rule to modify custody in which she sought, among other things, to be named domiciliary parent.

The custody trial began on June 26, 2025, and continued for four, non-consecutive days, during which the trial court heard extensive testimony from Kyle, Mallori, and Beth Joffrion, Mallori's mom, and considered the documentary evidence filed into the record.  At the conclusion of the trial, and after orally considering the factors set forth in La. Civ. Code art. 134(A), the trial court granted the parties joint legal custody of MMH, with Kyle designated as domiciliary parent. The trial court signed a judgment on September 30, 2025, in accordance with its ruling and ordering, among other things, that Mallori exercise physical custody of MMH on the 1st, 2nd, and 4th weekends of every month, from Friday after daycare or 5:00 p.m. until Sunday at 6:00 p.m.; that the parties exercise physical custody of MMH during the holidays and the summer as set forth in the judgment; that Mallori pay child support to Kyle in the amount of $861.00 per month; that the parties continue to use Renee McCarthy as their parenting coordinator for a period of one year and continue to communicate through Our Family Wizard until further order of the court; that Kyle be found in contempt of court for previously failing to pay child support and be ordered to pay $1,000.00 in attorney fees plus court costs; and that the parties shall be entitled to 50/50 physical custody of MMH on a week-to-week basis if Mallori relocates to Baton Rouge.

From this judgment, Mallori has appealed, arguing that a review of the Article 134 factors weighs in her favor and that she should be designated as domiciliary parent.  Mallori asserts the following assignments of error: (1) the trial court erred in designating Kyle as domiciliary parent of MMH based on Mallori's move from Baton Rouge to Mandeville after the divorce; and (2) the trial court erred in

---

[1] According to the record, Kyle has two older sons from his prior marriage.  Kyle was granted custody of his sons in September 2021.

3

designating Kyle as domiciliary parent of MMH where there was no evidence that Kyle had any plan for MMH's schooling, medical treatment, social growth, or daily care.

## DISCUSSION

Each child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount consideration being the best interest of the child. See La. Civ. Code art. 131; **Leger v. Leger**, 2022-1113 (La. App. 1 Cir. 3/13/23), 363 So.3d 519, 528, writ denied, 2023-00512 (La. 6/26/23), 363 So.3d 1231. The trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. **Jenkins v. Jenkins**, 2023-0087 (La. App. 1 Cir. 6/2/23), 370 So.3d 61, 74. The trial court's determination on child custody matters is entitled to great weight, and its discretion will not be disturbed on review in the absence of a clear showing of abuse. **Mulkey v. Mulkey**, 2012-2709 (La. 5/7/13), 118 So.3d 357, 368.

In most child custody cases, the trial court's determination is based heavily on factual findings. **Jenkins**, 370 So.3d at 74. It is well-settled that an appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. See **Kinnett v. Kinnett**, 2020-01134 (La. 10/10/21), 332 So.3d 1149, 1154. A court of appeal cannot simply substitute its own findings for that of the trial court. **Mulkey**, 118 So.3d at 368.

Article 134(A) provides the following non-exclusive list of factors that the trial court shall consider, along with any other relevant factors, in determining the best interest of the child:

> (1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

> (2) The love, affection, and other emotional ties between each party and the child.

4

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

The weight to be given each factor is left to the discretion of the trial court. **Moore v. Prater**, 2021-1430 (La. App. 1 Cir. 6/3/22), 342 So.3d 994, 1000. In making its determination, the trial court is not bound to make a mechanical evaluation of all statutory factors listed in Article 134, but should decide each case on its own facts and circumstances in light of Article 134 and all other relevant factors. **Underwood**

5

**v. Underwood**, 2021-0277 (La. App. 1 Cir. 10/21/21), 332 So.3d 128, 140. One court has observed:

> In child custody cases where two parents are fervently competing for custody and domiciliary status of the children, frequently the trial court must determine the best interest of the children solely from the testimony of the parents and their respective relatives or friends. This naturally passionate and self-interested testimony is rarely objective, leaving it to the trial court, who is in the best position to view firsthand the demeanor and tone of the witnesses, to assess the credibility of the witnesses, and decide how much weight to give the testimony in light of the factors in La. C.C. art. 134.

**Fuller v. Fuller**, 54,098 (La. App. 2 Cir. 7/21/21), 324 So.3d 1103, 1114, writ denied, 2021-01223 (La. 9/27/21), 324 So.3d 621.

In the instant case, the trial court noted that both Kyle and Mallori demonstrate love and have affection for MMH, and that both parents are capable of providing MMH with food, clothing, and basic material needs. Further, the trial court found that there was no history of substance abuse by either Kyle or Mallori, that the moral fitness of each parent appeared positive, that there were no mental or physical health issues of either party such that it would be a significant issue for MMH, and that both parents demonstrated a willingness to encourage a close relationship between the minor child and the other parent.

Although the trial court found there was no danger or potential for MMH to be abused by either Kyle or Mallori, the trial court did note its concerns with the allegations against Mallori regarding Kyle's son and also the alleged violence perpetrated by Mallori against Kyle. The trial court acknowledged Mallori's reason for moving with MMH to Mandeville following the parties' separation and the fact that it may have been difficult on Mallori as she only had her mother there to help her. However, the trial court noted that Mallori made the decision to move to Mandeville and has stayed there for fifteen months, away from Kyle and his "very large support network" in Baton Rouge. The trial court added that because of the distance between the residences of the parties, a situation created solely by Mallori's

6

decision to move, fifty-fifty custody of MMH was not possible. The trial court further expressed the importance of MMH having a relationship with her siblings.

Having carefully reviewed the record before us and the trial court's very thorough oral reasons for judgment, it is evident that the trial court sufficiently considered all relevant factors in making its determination herein. Accordingly, while the record shows that Kyle and Mallori are both capable and responsible parents of MMH, we cannot say the trial court abused its discretion in awarding the parties joint custody with Kyle designated as domiciliary parent.

## DECREE

For the above and foregoing reasons, we affirm the September 30, 2025 judgment of the trial court. All costs associated with this appeal are assessed against plaintiff/appellant, Mallori Elizabeth Diez.

**AFFIRMED.**